

B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

**Dated: September 2nd, 2021**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

| IN RE: | CASE NO. 3:16-bk-30247 |
|---|---|
| SABBATICAL, INC., | CHAPTER 11 |
| Debtor. | JUDGE B. MCKAY MIGNAULT |

### MEMORANDUM OPINION AND ORDER

Pending are two Motions to Conduct Rule 2004 Discovery filed by Plan Administrator Robert S. Bernstein: one to conduct discovery on Bailes, Craig, Yon & Sellards, PLLC ("BCYS") [dckt. 176], and the other to conduct discovery on Offutt Nord Burchett, PLLC ("ON") [dckt. 182]. The former was filed on December 20, 2020, and the latter was filed January 4, 2021. On January 19, 2021, BCYS filed its Response [dckt. 188]. On January 20, 2021, ON filed its Response [dckt. 189]. On January 21, 2021, Denise Dawn Johnson filed her Response [dckt. 190], and she filed an Amended Response [dckt. 194] on March 4, 2021.

### I.

**A.    Procedural History**

The Court held a hearing on the 2004 Motions on January 22, 2021. At that time, after considering arguments from the parties, the Court continued the matters to allow further negotiations to take place and to afford the Court more time to review the issues presented. A second hearing was held on March 5, 2021. After being informed that the parties may have

partially agreed upon some of the issues presented, the Court ordered that two documents be filed: 1) a proposed agreed order within 21 days that outlines the matters no longer in controversy and presents a resolution of those matters; and 2) a joint status report within 28 days that lists the specific issues requiring adjudication, along with an indication of whether the parties wish to provide further briefing or stand on their pleadings as already filed.

The parties thereafter submitted several status reports. The first was jointly filed by Mr. Bernstein, Bailes, Craig, Yon & Sellards, PLLC ("BCYS"), and Offutt Nord, PLLC ("ON") [dckt. 197]. The report stated that they were unable to submit proposed agreed orders resolving any of the outstanding issues. Subsequently, Mr. Bernstein and BCYS submitted a second joint status report which outlined the issues remaining in controversy and requiring adjudication by the Court [dckt. 198]. A third joint status report was filed immediately thereafter by Mr. Bernstein and ON that similarly stated the outstanding issues requiring adjudication, along with a request for further briefing. However, no proposed briefing schedule was submitted, and the Court did not thereafter issue a briefing order.

In addition to those status reports, interested parties Denise Johnson and Dennis Ray Johnson, II also submitted several reports to the Court in response to those submitted by Mr. Bernstein, BCYS, and ON [dckts. 200 & 202].

While the Court considered the 2004 Motions and the legal issues presented therein, Mr. Bernstein filed two adversary proceedings: one against BCYS and one against ON (adversary proceeding nos. 3:21-ap-3008 and 3:21-ap-3009, respectively). The Court held a hearing in the BCYS adversary proceeding, during which both parties' counsel requested that the Court issue a ruling on the BCYS Motion, as the ruling would be controlling on the motion before the Court in the adversary proceeding. During the hearing, counsel for Mr. Bernstein and counsel for BCYS

both assumed that the 2004 Motions—at least with respect to BCYS—were already under advisement. As briefing is sufficient regardless, these matters are ripe and ready for adjudication.

**B.    Facts**

Sabbatical, Inc. ("Sabbatical") filed for bankruptcy protection on May 18, 2016 in conjunction with several other affiliate debtors that formed a coal enterprise. Dennis Ray Johnson, II was the President of Sabbatical at that time, and his wife was (and continues to be) Denise Johnson. Mr. Johnson also filed an individual Chapter 11 case at the same time. All the coal enterprise cases, including Sabbatical and Mr. Johnson's individual case, were administered jointly.[1] Prior to filing, BCYS had represented Sabbatical and some of the other coal enterprise debtors.

On March 24, 2017, Thomas Fluharty was appointed as Chapter 11 Trustee (the "Chapter 11 Trustee") for the coal enterprise debtors, including Sabbatical. Mr. Fluharty presented a Chapter 11 Liquidation Plan for Sabbatical (the "Sabbatical Plan"), which was confirmed by this Court on March 9, 2020. Pursuant to the Sabbatical Plan, Mr. Bernstein was appointed as the Plan Administrator. The Trustee also entered into a global settlement in the coal enterprise cases whereby the coal enterprise debtors' estates' interests in certain causes of action were sold to Denise Johnson and Peoples Bank. The sale occurred pursuant to an Asset Purchase Agreement (the "APA").

---

[1] The jointly administered debtors were as follows: Appalachian Mining and Reclamation, LLC, Bankr. 16-30400; DJWV 1, LLC, Bankr. 16-30249; DJWV2, LLC, Bankr. 16-30062; Elkview Reclamation and Processing, LLC, Bankr. 16-30250; Green Coal, LLC, Bankr. 16-30399; Little Kentucky Elk, LLC, Bankr. 16-30251; Moussie Processing, LLC, Bankr. 16-30248; Producer's Coal, Inc., Bankr. 16-30402; Producer's Land, LLC, Bankr. 16-30401; Redbud Dock, LLC, Bankr. 16-30398; Southern Marine Services, LLC, Bankr. 16-30063; Southern Marine Terminal, LLC, Bankr. 16-30064; and Dennis R. Johnson, II, Bankr. 16-30227. Joint administration was terminated by order dated January 28, 2020 [dckt. 135].

In November of 2020, Mr. Bernstein contacted both BCYS and ON via letter requesting information relating to their earlier engagement with and representation of the coal enterprise debtors. Although BCYS and ON have largely ignored these requests, Mr. Bernstein did receive from BCYS a copy of a Trust Report from a Southern Marine Terminal LLC ("Southern Marine") escrow account held by BCYS.[2] In that Trust Report, Mr. Bernstein discovered two wire transfers of $100,000 each that were made to ON as retainer payments. The transfers were made on March 3, 2016 and April 26, 2016, just prior to the commencement of the coal enterprise debtors' bankruptcy cases. Mr. Bernstein searched the Southern Marine docket and saw no fee application or application to employ ON. Thereafter, Mr. Bernstein requested that ON return the two wire transfers. In its response, ON asserted that it provided adequate consideration for transfers, including representation of some of the coal enterprise debtors, including Southern Marine, and declined to return the funds. Mr. Bernstein continues to seek further information from ON so that he may evaluate any claims the coal enterprise debtors' estates may have in the transferred funds, along with ON's purported defenses. ON has refused, asserting attorney-client privilege.

---

[2] Southern Marine Terminal LLC is one of the coal enterprise debtors.

**C.     Arguments of the Parties**

Mr. Bernstein, as Plan Administrator, argues that he is solely empowered to commence or continue recovery actions, estate litigation, and all other causes of action pursuant to the Sabbatical Plan, which transferred the interest in those actions to him from the Chapter 11 Trustee. Mr. Bernstein asserts that he is vested with the responsibility of settling, litigating, or abandoning any causes of action, along with maximizing the amounts received by creditors under the Sabbatical Plan. To support his theories, he points to language contained in the Sabbatical Plan:

> 8.6.2 . . . The Plan Administrator is empowered, in his sole discretion to: . . .
>> (iv) commence or continue Recovery Actions, Estate Litigation and any and all other Causes of Action transferred by the Trustee upon Confirmation for the purpose of liquidating the Assets or Maximizing the value of the Creditors' Trust; . . .
>> (xv) in its sole discretion, settle, compromise, litigate to a final judgment, or abandon any Cause of Action, Disputed Claim, or Claim Objection . . . .

Sabbatical Plan, docket no. 133, pp. 21–23. He additionally relies on statements made in the APA:

> 2.2 Sale and Purchase of the Purchased Assets . . .
>> (a) At the closing, the Trustee shall sell, assign, transfer, and/or deliver to Peoples Bank, or its assignee/designee the following: . . .
>>> (2) All rights, title, and interest of the jointly administered Debtors, in all claims, causes of action and rights to payment, excluding the Noble Litigation and the Fraudulent Transfer Action . . . that the Seller and the jointly administered Debtors through the Trustee, are entitled to exercise, entitled to recover . . . . These assets shall, unless People[]s Bank[] selects a different assignee/designee, be immediately assigned by the Trustee to the

5

> Sabbatical Plan Administrator to be liquidated for the sole benefit of Peoples Bank.

Trustee's Motion to Sell Certain Causes of Action, case no. 3:16-bk-30227, docket no. 1767, exh. A. Accordingly, Mr. Bernstein asserts that he has ownership of the rights and causes of action of the coal enterprise debtors, including Sabbatical. He reasons that BCYS likely possesses substantial information and documents that may lead to a recovery for the Estate because it has represented a number of the coal enterprise debtors in various matters. Specifically, BCYS may have information relating to the wire transfers to ON.

Mr. Bernstein further believes that attorney-client privilege does not prevent him from recovering information from BCYS and ON because he possesses the attorney-client privileges of the coal enterprise debtors via the APA and the transfer of rights and powers from the Trustee in the Sabbatical Plan. He argues that attorney-client privilege belongs to the client (the coal enterprise debtors), and because Mr. Bernstein stands in their shoes, he can waive that privilege. He asserts that the following language contained in the Sabbatical Plan supports his position:

> 8.2 Transfer of Assets to the Creditor's Trust . . .
>> 8.2.4 All rights in connection with the vesting and transfer of the Creditor's Trust Assets, including the Causes of Action, and any attorney-client privileges, work-product protection or other privilege or immunity ing [sic] to any documents or communications of the Debtors' or Trustee's professionals (whether written or oral) related to the Creditors' Trust Assets, will vest with the Creditors' Trust. All bank accounts established by the Debtor or Chapter 11 Trustee will be transferred to and held in the Creditors' Trust on behalf of the Beneficiaries, subject to the provisions of the Plan and the Creditors' Trust terms. The Debtor, the Chapter 11 Trustee and the Plan Administrator are authorized and directed to take all necessary actions to effectuate the foregoing.

6

Sabbatical Plan, docket no. 133, p. 18.  In his prayer for relief in both 2004 Motions, he asks for: (1) an order compelling ON and BCYS to produce all documents within their possession, custody, or control that are responsive to the document requests within ten days of the order; and (2) an order compelling a representative of ON and BCYS to submit to a sworn examination within twenty-eight (28) days of the order.

In response, BCYS admits that Mr. Bernstein, as Plan Administrator, has "a right to obtain information necessary to investigate assets of the Debtors transferred to him under the Sabbatical Plan," but that not all assets of the Debtors were transferred to the Plan Administrator. BCYS further argues it is not clear whether Mr. Bernstein controls the attorney-client privilege with respect to all the debtors and all their matters.  All BCYS is willing to provide to Mr. Bernstein is discovery regarding the coal enterprise debtors' assets that were transferred to him under the Sabbatical Plan and an accounting of financial transactions relating to the assets transferred to him under the Plan.

In its response, ON attempts to explain the retainer, stating that it pertained to ON's representation of multiple entities and individuals that filed voluntary bankruptcy petitions subsequent to their retention of and representation by ON.  The representation allegedly involved several civil actions and included defense against involuntary bankruptcy petitions.  The entities represented by ON include almost all of the coal enterprise debtors, as well as Denise Johnson and Producer's Dock, Inc. (both non-debtors).  ON alleges that it previously addressed the retainer issue with the Chapter 11 Trustee in 2016, and that a portion of the retainer had already been returned.

Similarly to BCYS, ON is concerned with attorney-client privilege and the work-product doctrine.  It also brought up the curious relationship between the Plan Administrator and

7

Peoples Bank; the Plan Administrator is represented by the Bernstein-Burkley, P.C. ("Bernstein-Burkley"), which also represents Peoples Bank. Peoples Bank was an adverse party to the Debtors in several civil matters. Notably, ON does not contest that the Plan Administrator holds the attorney-client privilege for the corporate coal enterprise debtors, but ON contends that he does not hold any privilege with regards to files pertaining to representation of Mr. and Mrs. Johnson individually.

Interested party Denise Johnson states that she has had an attorney-client relationship with BCYS and she does not waive any attorney-client relationship. Importantly, she was not a debtor in any of the coal enterprise bankruptcies. Ms. Johnson also looks to the language in the APA, which states that she received transfer of certain rights, title, and interests of the Johnson Estate, the Sabbatical Estate, and the C2C Estate.

Mr. Johnson, in his response, does not waive his personal privilege, but he also does not refuse to waive his privilege. He would like to take a "wait and see" approach, as he is involved in other legal matters with Peoples Bank; a determination from the Southern District of West Virginia regarding the necessity of his cooperation will inform his decision to waive his privilege. He asks that the Joint Status Reports be amended to reflect the positions asserted in his Response.

## II.

**A.    Legal Standards**

### *Rule 2004 Examination*

Under Rule 2004(a) of the Federal Rules of Bankruptcy Procedure, "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). Rule 2004(b) governs the broad scope of the examination, providing that any probing

may "relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). Furthermore, in a Chapter 11 reorganization case, "the examination may also relate to the operation of any business and the desirability of its continuance, the sources of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan." *Id.*

The primary purpose of a Rule 2004 examination is to give the parties a tool "to quickly ascertain the extent and location of the estate's assets." *In re Moore Trucking, Inc.*, No. 2:20-bk-20136, 2020 WL 6948987, at *6 (Bankr. S.D.W. Va. July 14, 2020) (quoting *In re Fearn*, 96 B.R. 135 (Bankr. S.D. Ohio 1989)). Rule 2004 examinations are appropriate for revealing the nature and extent of bankruptcy estate and for "discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (internal citations omitted).

Rule 2004 discovery is not permitted once an adversary proceeding has been initiated. *In re Blackjewel, L.L.C.,* No. 3:19-bk-30289, 2020 WL 6948815, at *6 (Bankr. S.D. W. Va. July 14, 2020), *reconsideration denied*, No. 3:19-bk-30289, 2020 WL 6948332 (Bankr. S.D. W. Va. Aug. 17, 2020). There is a "well-recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004." *Id.* (citing *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002), *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996), *In re Symington*, 209 B.R. 678, 684 (Bankr. D. Md. 1997), and *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009)). The oft-cited *Symington* decision describes certain key distinctions

between Rule 2004 examinations and pretrial discovery. *Symington*, 209 B.R. at 684. The Bankruptcy Court for the District of Maryland defines the Rule 2004 examination as a "threshold inquiry into the assets and conduct of debtors bankruptcy." *Id.* "As an investigatory tool, its nature is inquisitory rather than accusatory, although information discovered by its employment may presage litigation." *Id.* Timing is the most significant difference; while a Rule 2004 examination is conducted *prelitigation*, discovery under the Federal Rules of Civil Procedure takes place *pretrial*, after the filing of a complaint. *Id.*

More specifically, a party may not use a 2004 examination with respect to "(1) entities affected by the pending adversary proceeding(s) and (2) issues addressed in its pending adversary proceeding(s) . . . ." *In re Southeastern Materials, Inc.*, No. 09–52606, 2010 WL 5128608, at *4 (Bankr. M.D.N.C. December 10, 2010) (*citing, In re Buick,* 174 B.R. 299, 306 (Bankr. D. Colo. 1994)). Therefore, the existence of an adversary proceeding does not create a "blanket prohibition" on Rule 2004 examinations, and a party may conduct Rule 2004 examinations, but only regarding "issues in addition or beyond the scope of its pending adversary proceeding." *Id.*

### *Attorney-Client Privilege*

Under Bankruptcy Rule 9017 and the Federal Rules of Evidence, privileges in federal courts, such as the attorney-client privilege, are governed by federal common law. *In re Miller,* 247 B.R. 704, 708 (Bankr. N.D. Ohio 2000); Fed. R. Evid. 501.

The attorney-client privilege aids in the administration of justice by promoting full and frank communication between attorneys and their clients. *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 348 (1986). It is well-established that the attorney-client privilege attaches to corporations as well as individuals. *Id.* (citing *Upjohn Co. v. U.S.*, 449 U.S.

383, 389–90 (1981)). The ability to assert or waive that privilege typically rests within the corporation's management and is normally exercised by its officers or directors, and the managers must exercise the privilege in a manner consistent with their fiduciary duty to the corporation. *Weintraub*, 471 U.S. at 348–49.

The Bankruptcy Code does not explicitly address the issue of whether a trustee appointed in a Chapter 11 reorganization possesses the power to waive the attorney-client privilege with respect to pre-bankruptcy communications. The Supreme Court resolved a circuit split on this issue in the *Weintraub* decision. The Court discussed the wide range of powers and duties relating to management of a corporation that a Chapter 11 trustee has under the Code. *Id.* at 352. Importantly, a trustee is "accountable for all property received" and has the duty to maximize the value of the estate. *Id.* (internal citations omitted). Because the trustee "plays the role most analogous to that of a solvent corporation's management" and the debtor's directors retain "virtually no management powers," the Supreme Court reasoned that a corporation's attorney-client privilege passes to the trustee when that corporation is in bankruptcy. *Id.* at 353. Without the ability to waive the attorney-client privilege with respect to pre-bankruptcy communications, a corporate debtor's directors would retain the one management power that could prevent a trustee from investigating their own conduct. *Id.* at 353–54. "Without control over the privilege, the trustee might not be able to discover hidden assets or looting schemes, and therefore might not be able to make the necessary showing. *Id.* at 354. Therefore, "the vesting in the trustee control of the corporation's attorney-client privilege most closely comports with the allocation of the waiver power to management outside of bankruptcy without in any way obstructing the careful design of the Bankruptcy Code." *Id.*

**B.     Analysis**

Mr. Bernstein filed two adversary proceedings directly related to the main bankruptcy case in which he filed the 2004 Motions. The Motions seek discovery from ON and BCYS—the two law firms against which Mr. Bernstein filed adversary proceedings. The adversary proceedings both seek the "turnover of money/property" from the law firms to the Plan Administrator. Because the Motions in the main case seek discovery relating to the entities affected by those adversary proceedings, and because the information sought relates to the issues addressed in those adversary proceedings, a Rule 2004 examination is procedurally inappropriate at this point. *See, In re Southeastern Materials, Inc.*, 2010 WL 5128608, at *4.

The Sabbatical Plan discharged the Chapter 11 Trustee and directed him to turn over all documents and records to the Plan Administrator [dckt. 133; Sec. 8.4; p. 19]. The language in the Sabbatical Plan and the Court Order confirming the Sabbatical Plan [dckt. 151] states that the Plan Administrator "shall have such powers and duties to implement the Plan, including authorization to issue, execute, deliver, file and record and documents or court papers or pleadings and to take any and all actions that are necessary or desirable to implement, effectuate, and consummate the Plan and the transactions contemplated by the Plan . . ." This language grants the Plan Administrator broad control over the bankruptcy estate, much akin to that a Chapter 11 Trustee or Debtor in Possession over a solvent corporation. Hypothetically, this broad transfer of power is sufficient to imply a transfer of the power to waive the attorney-client privilege that the Chapter 11 Trustee once had.

However, this Court is hobbled by the existence of the adversary proceedings. As dictated in precedent from this district and from other courts in the Fourth Circuit, Rule 2004 discovery is deemed inappropriate once an adversary proceeding has been filed, as discovery at

12

that point is governed by the Federal Rules of Civil Procedure, made applicable by the Federal Rules of Bankruptcy Procedure. Although this Court sees that Mr. Bernstein likely ascended to the status of a Trustee and received all the coal enterprise debtors' attorney-client privilege and work-product rights, the 2004 Motions cannot now be granted because they are procedurally defective.

### III.

As stated in the foregoing analysis, this Court must deny the 2004 Motions because adversary proceedings have been filed which deal with the same facts, parties, and circumstances. Accordingly,

**IT IS ORDERED** that the 2004 Motions be, and are hereby, **DENIED WITHOUT PREJUDICE.**