

B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

Dated: March 27th, 2023

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

| | |
|---|---|
| IN RE: | CASE NO. 3:16-bk-30247 |
| SABBATICAL, INC. | CHAPTER 11 |
| Debtor. | JUDGE B. MCKAY MIGNAULT |

### <u>MEMORANDUM OPINION AND ORDER</u>

Pending are the Plan Administrator's *Motion Seeking an Order Cancelling All Fee Arrangements and Disgorging Attorney Fees Paid and Expenses Reimbursed to Offutt Nord Burchett, PLLC* [dkt. 221] (the "<u>Motion to Disgorge</u>"), Offutt Nord, PLLC's[1] response thereto [dkt. 235] (the "<u>Response</u>"), the Plan Administrator's reply to the Response [dkt. 236] (the "<u>Reply</u>"), Offutt Nord, PLLC's supplement to its Response [dkt. 241] (the "<u>Invoices</u>"), and the Plan Administrator's supplement to his Motion to Disgorge [dkt. 242] ("<u>Plan Administrator's Supplement</u>").

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court is vested with subject jurisdiction pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408–1409.

---

[1] During much of the time period relevant to the matters at issue, Offutt Nord, PLLC was named Offutt Nord Burchett, PLLC. This opinion will refer to the firm as "Offutt Nord" throughout.

# I.

1.      On May 18, 2016, Sabbatical, Inc. (the "Debtor" or "Sabbatical") filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.      On March 24, 2017, Thomas H. Fluharty was appointed as Chapter 11 Trustee of Sabbatical [dkt. 131].

3.      On November 12, 2019, the Debtor filed a Plan of Liquidation [dkt. 133] (the "Plan").

4.      On March 9, 2020, the Court entered an order confirming the Debtor's Plan [dkt. 151] (the "Confirmation Order").

5.      The Confirmation Order appointed Robert S. Bernstein as the Plan Administrator (the "Plan Administrator").

6.      Sabbatical's case was jointly administered with the cases of sixteen other affiliated debtor entities (the "Debtors"), [2] all of which were owned and controlled by Dennis R. Johnson [dkt. 131].

7.      One of the Debtors was Southern Marine Terminal, LLC ("SMT"), which entered bankruptcy when an involuntary petition was filed against it on February 12, 2016 (the "SMT Commencement Date") in Bankruptcy Case No. 16-bk-30064 (the "SMT Bankruptcy Case").

---

[2]  The jointly-administered debtors and cases are as follows:  Dennis Ray Johnson, II, Case No. 16-30227; Appalachian Mining and Reclamation, LLC, Case No. 16-30400; DJWV1, LLC, Case No. 16-30249; DJWV2, LLC, Case No. 16-30062; Elkview Reclamation and Processing, LLC, Case No. 16-30250; Green Coal, LLC, Case No. 16-30399; Joint Venture Development, LLC, Case No. 16-30403; Little Kentucky Elk, LLC, 16-30251; Moussie Processing, LLC, Case No. 16-30248; Producer's Coal, Inc., Case No. 16-30402; Producer's Land, LLC, Case No. 16-30401; Redbud Dock, LLC, Case No. 16-30398; Sabbatical, Inc., Case No. 16-30247; Southern Marine Services, LLC, Case No. 16-30063; and Southern Marine Terminal, LLC, Case No. 16-30064.

8.      An order for relief was entered in the SMT Bankruptcy Case on January 3, 2017 (the "SMT Relief Date").

9.      Prior to the SMT Commencement Date, SMT was represented by the law firm Bailes, Craig, Yon & Sellards ("Bailes Craig").

10.     Upon review of information received from Bailes Craig, the Plan Administrator discovered that two wire transfers of $100,000 each were made to the law firm Offutt Nord Burchett, PLLC (n/k/a Offutt Nord, PLLC and both referred to interchangeably herein as "Offutt Nord") from Bailes Craig's trust account for SMT for "retainers."  These wire transfers occurred on March 3, 2016 and April 26, 2016, respectively.

11.     Offutt Nord received these retainers in the period after the SMT Commencement Date and before the SMT Relief Date (the "Gap Period").

12.     During the Gap Period, Offutt Nord provided legal services to Dennis Johnson and other related debtor entities owned and controlled by Dennis Johnson, including Southern Marine Services, LLC, Sabbatical, Moussie Processing, LLC, The Little Kentucky Elk, LLC, Elkview Reclamation and Processing, LLC, DJWV1, LLC, and SMT (the "Related Debtors"), and was paid for its services from the "retainers" received from the Bailes Craig escrow account for SMT.

13.     According to the spreadsheet provided as Exhibit C to Offutt Nord's Supplement, Offutt Nord applied its invoices against the $200,000 retainer ("Retainer") on the following dates and in the following amounts during the Gap Period for the SMT Bankruptcy Case:

| Date | Amount |
|---|---|
| April 8, 2016 | $26,555.65 |
| May 2, 2016 | $23,455.06 |
| May 12, 2016 | $250.00 |
| May 20, 2016 | $9,085.00 |
| May 25, 2016 | $3,580.00 |
| June 20, 2016 | $13,005.74 |
| July 19, 2016 | $5,530.14 |
| August 10, 2016 | $19,071.82 |
| September 6, 2016 | $2,059.75 |
| October 12, 2016 | $17,276.51 |
| November 7, 2016 | $2,647.64 |
| **TOTAL** | **$122,517.31** |

14.     Some of these payments were for Offutt Nord's services to the Related Debtors as local counsel in their bankruptcy cases, but most of these payments were for legal services in other non-bankruptcy litigation.

15.     Offutt Nord never filed an application to be retained as debtor's counsel in the involuntary cases filed against DJWV2, LLC, Southern Marine Services LLC, or SMT (the "Involuntary Cases"), but represented those debtors beginning in May of 2016 (during the Gap Period) seeking dismissal of these Involuntary Cases.  Offutt Nord ceased representing these debtors when the Chapter 11 Trustee was ultimately appointed.  Offutt Nord also never sought approval to be compensated in the Involuntary Cases.

16.     On May 18, 2016 (during the Gap Period), Offutt Nord filed the bankruptcy cases for the Debtor, Moussie Processing LLC, DJWV1, LLC, Elkview Reclamation and Processing, LLC, and The Little Kentucky Elk.  In May and June of 2016, Offutt Nord filed applications to be retained as local counsel in these cases (the "Retention Applications").  *See* Bankr. Case No. 3:16-bk-30247, dkt. 16 (filed May 27, 2016), Bankr. Case No. 3:16-bk-30248, dkt. 25 (filed June 3, 2016); Bankr. Case No. 3:16-bk-30249, dkt. 25 (filed June 3, 2016); Bankr. Case No. 3:16-bk-

30250, dkt. 20 (filed May 27, 2016); and Bankr. Case No. 3:16-bk-30251, dkt. 30 (filed June 3, 2016).

17.    The Retention Applications did not disclose Offutt Nord's prior and ongoing representation of Dennis Johnson or the Related Debtors, did not disclose the amount or origin of the $200,000 Retainer it held, and did not disclose any of the pre-petition and/or post-petition payments it had received from applying invoices against the Retainer.  Each of the Retention Applications assert that Offutt Nord "has considerable experience in bankruptcy and insolvency matters;" assert that Offutt Nord "has no connection with the Debtor, its creditors or any other party-in-interest in this case;" assert that Offutt Nord "will apply to the Court for allowance of compensation and reimbursement of expenses;" and include declarations of counsel attesting that Offutt Nord is disinterested and qualified to represent the debtors.  Based on these representations, the Court granted the Retention Applications.

18.    On May 20, 2016, Offutt Nord wired $40,000 of the Retainer to Whiteford Taylor Preston LLC ("WTP") to fund its retainer for services as lead bankruptcy counsel in the Bankruptcy Cases for Sabbatical, Moussie Processing, LLC, The Little Kentucky Elk, LLC, DJWV1, LLC, and the Elkview Reclamation and Processing, LLC.  Offutt Nord never sought Court approval for this postpetition wire transfer.

19.    Unlike Offutt Nord, WTP filed a *Form 2020 Disclosure of Compensation of Attorney for Debtor(s)* disclosing the amount of retainer received for its services[3] around June of 2016.

---

[3] *See* Bankr. Case No. 3:16-bk-30247, dkt. 22; Bankr. Case No. 3:16-bk-30248, dkt. 23; Bankr. Case No. 3:16-bk-30249, dkt. 23; Bankr. Case No. 3:16-bk-30250, dkt. 28; and Bankr. Case No. 3:16-bk-30251, dkt. 28.

20.    On December 22, 2016, the $37,482.69 that remained of Offutt Nord's $200,000 Retainer was turned over to the Chapter 11 Trustee. *See* Response, Exh. C.

21.    Upon discovering the existence of the $200,000 Retainer Offutt Nord received from Bailes Craig, the Plan Administrator requested that Offutt Nord turn over the two wire transfers by letter dated December 9, 2020. *See* Motion to Disgorge, Exh. B.

22.    On December 11, 2020, Offutt Nord responded, asserting that it had provided consideration for its representation of the various debtor entities and refusing to return the Retainer. *See id.*, Exh. C.

23.    On December 16, 2020, the Plan Administrator responded via email requesting further information to evaluate Offutt Nord's arguments and defenses and to evaluate the rights and claims the Debtors may have against Offutt Nord. *See id.*, Exh. D.

24.    On December 17, 2020, Offutt Nord responded via email, refusing to provide client files or invoices absent a court order based on attorney-client privilege. *See id.*, Exh. E.

25.    On June 11, 2021, the Plan Administrator filed an adversary complaint against Offutt Nord seeking, among other things, to avoid the $200,000 Retainer transferred from Bailes Craig to Offutt Nord during the Gap Period.  That adversary proceeding is pending in Case No. 3:21-ap-03009 (the "AP").

26.    On January 12, 2022, in resolution of a discovery dispute between the Plan Administrator and Offutt Nord, the Court ordered Offutt Nord to turn over all documents within its possession, custody, or control that are responsive to the Plan Administrator's discovery requests within ten days of the order.  That order was entered January 25, 2022 [AP dkt. 56].

27.    The Plan Administrator asserts in the Motion to Disgorge that, despite the Court's January 25, 2022 Order, no evidence has been produced to substantiate Offutt Nord's claim that

the legal services it provided to the Debtors' estates were reasonable consideration for the Retainer Offutt Nord received.

28.  The Plan Administrator asserts that disgorgement is appropriate because Offutt Nord (1) failed disclose the compensation it received as required by 11 U.S.C. § 329 and Rule 2016(b) of the Federal Rules of Civil Procedure; (2) failed to comply with 11 U.S.C. § 327's requirement that the Bankruptcy Court approve a professional's employment prior to being compensated for services—Offutt Nord was retained as a professional in *some* cases, but never filed an application for compensation for Court approval prior to applying its invoices against the Retainer; and (3) failed to disclose its adverse interests to the estate, which would have precluded it from being retained as an estate professional pursuant to 11 U.S.C. § 327 and Rule 2014 of the Federal Rules of Bankruptcy Procedure.

29.  The Plan Administrator's Motion to Disgorge requests that the Court enter an order determining that (1) the compensation Offutt Nord received was unreasonable because SMT received less than equivalent value for services purportedly rendered by Offutt Nord; (2) any services rendered by Offutt Nord to the Related Debtors were unreasonable and not performed by a disinterested counsel; (3) $162,157.31 of the $200,000 must be disgorged from Offutt Nord (representing the $200,000 Retainer less the remainder paid to the Chapter 11 Trustee on December 22, 2016); and (4) any pending fee arrangement between Offutt Nord and the Debtors must be cancelled.

30.  Offutt Nord's Response argues that it provided valuable consideration to SMT and other Johnson-related entities in exchange for the funds it received and that "[s]uch services were necessary in order to protect the assets of the Estate."  Specifically,

> From approximately March 2016 to October 2016, Offutt Nord represented Southern Marine Terminal and other Dennis Johnson related entities in eight

> (8) separate state court civil actions, eight (8) bankruptcy court matters, and a dispute over insurance coverage for Southern Marine Terminal. In all Offutt Nord preformed some 434.3 hours of legal services to the benefit of Southern Marine Terminal and other Dennis Johnson related entities. Offutt Nord's rates, as stated earlier, were reasonable: $275 for Partners, $225 for Associates, and $135 for Paralegals.

Response at 8. Thus, Offutt Nord maintains that it should not be required to disgorge the payments it received.

31.    Alternatively, in the event the Court considers disgorgement of fees, Offutt Nord requests that the Court exercise its discretion to extend leniency because (a) Offutt Nord did not attempt to hide its fees or work from the Chapter 11 Trustee and (b) its failure to file a fee application was inadvertent and not willful. In support of this claim, Offutt Nord's Response attaches *draft* a fee application as Exhibit E; Offutt Nord cannot account for why it was not officially filed on the docket.

32.    The Plan Administrator's Reply argues that the Court cannot rely solely on the unsubstantiated claims of Offutt Nord that "valuable consideration" was provided and that the failure to file the draft fee application was inadvertent. The Plan Administrator describes the draft fee application as "woefully insufficient" because it fails to address all the factors necessary for the Court to analyze the reasonableness of compensation and fails to include a breakdown of the time spent, the services rendered, and the fees charged for each service. The Plan Administrator's Reply criticizes the Response for not addressing Offutt Nord's failure to file retention applications in the Involuntary Cases. The Reply further argues that if Offutt Nord's intent is a relevant factor, that factor weighs in favor of disgorgement since Offutt Nord has long known of its obligations under the Bankruptcy Code but has failed to comply. The Reply states that Offutt Nord "repeatedly violated the requirements of the Bankruptcy Code and Rules from the outset of the bankruptcy

case" and still "has not taken any additional steps to properly disclose to the Court the amount and source of the compensation received."

33.    On June 29, 2022, the Court held an initial hearing on the Motion to Disgorge, Response, and Reply.  At that hearing, the Court requested that the Plan Administrator provide a spreadsheet detailing the matters handled by Offutt Nord and additionally required Offutt Nord to file all invoices applied against the Retainer within fourteen days.  The Court also scheduled an evidentiary hearing on these matters during which Mr. Steve Burchett, the lead counsel who handled these matters for Offutt Nord but is no longer employed by Offutt Nord, was to appear and testify.

34.    On July 12, 2022, the Plan Administrator filed his spreadsheet [dkt. 242] describing the legal matters that Offutt Nord handled for Dennis Johnson and his various entities.

35.    Also on July 12, 2022, Offutt Nord filed its Invoices [dkt. 241] that were applied against the Retainer.

36.    The Invoices show that Offutt Nord did not open separate matters for each of the Related Debtors, but instead billed time for work performed on any and all bankruptcy cases to a single matter for Dennis Johnson as the named client.  In fact, all of the Invoices were billed to client no. 1445, Dennis Johnson.

37.    After several continuances, the Court held an evidentiary hearing on these matters on November 7, 2022 (the "Evidentiary Hearing").  During the evidentiary hearing, Mr. Burchett testified under oath regarding the facts and circumstances relating to Offutt Nord's legal services at issue.  Mr. Burchett testified credibly to the following:

a.  Offutt Nord was engaged by Dennis Johnson to handle a variety of matters, but Mr. Johnson did not disclose the full scope of the issues involved.  Mr. Johnson came to the office every other day with a new lawsuit and "kept adding on issues."

b.  Offutt Nord performed a staggering amount of work on these matters.

c.  Offutt Nord's primary effort was focused on opposing a receivership action brought by Peoples Bank.  Offutt Nord also handled other litigation, such as breach of contract actions, and agreed to become local counsel in the bankruptcy cases.

d.  Mr. Burchett and Offutt Nord did not know that the Retainer received from Bailes Craig were SMT's funds.

e.  At the time that the Retainer was received, Mr. Burchett did not know that an involuntary bankruptcy case had been filed against SMT in February of 2016.  Mr. Burchett also did not know that Mr. Johnson had filed bankruptcy in May of 2016, around the same time that the Retainer was received.

f.  When asked about the value provided to SMT in exchange for the Retainer it received and applied against its Invoices, Mr. Burchett testified that Offutt Nord's efforts preserved assets of the estate against being "cherry picked" by creditors. Mr. Burchett mentioned a wash plant facility that was protected from Peoples Bank and had some value, but he could not monetize that value and did not provide details to show that Offutt Nord's services protected that asset or provided any specific value to the estate.

g.  Mr. Burchett did not know why Retention Applications for Offutt Nord were filed in some bankruptcy cases but not others.

h. Offutt Nord is a small firm, and contrary to the statements made in the Retention Applications, Offutt Nord is not experienced in bankruptcy matters.  However, Mr. Burchett testified that he believed Offutt Nord, with the guidance of lead bankruptcy counsel at WTP, could be competent to serve as local counsel.

i. Although the Retention Applications attest that Offutt Nord and its attorneys are disinterested, Offutt Nord's investigation consisted of a single conflict check performed when Offutt Nord took on Dennis Johnson and his related companies as clients around March 2016 to confirm that Offutt Nord had no conflict preventing Offutt Nord from representing Dennis Johnson and his companies. Offutt Nord never performed conflict checks against the creditor matrix for each debtor entity and did no additional due diligence to ensure the firm was disinterested and qualified to represent each debtor when the Retention Applications were prepared and filed.

j. Mr. Burchett testified that he does not know why fee applications were never filed with the Bankruptcy Court.

k. Mr. Burchett admitted that all bankruptcy work performed for the Related Debtors were billed to one matter for the named client "Dennis Johnson" instead of being billed as separate matters.

l. Mr. Burchett testified that he was not aware that Offutt Nord's Retention Applications should have disclosed the firm's representation of Dennis Johnson and was not aware that the Bankruptcy Court could not have approved Offutt Nord's employment as local counsel if that conflict had been disclosed.

m. Mr. Burchett testified that he is aware that Offutt Nord should have disclosed the details of the Retainer to the Bankruptcy Court, and he does not know why that information was not disclosed.

n. Mr. Burchett admitted that Offutt Nord applied its invoices for all work performed for Dennis Johnson and his companies against the Retainer without first seeking and obtaining approval from the Bankruptcy Court to do so.

o. Mr. Burchett testified that Offutt Nord has no internal process for ensuring against payment prior to Bankruptcy Court authorization when a client is a bankruptcy debtor.

38. The Court also questioned Mr. Fluharty, who served as the Chapter 11 Trustee prior to confirmation of the Plan and appointment of the Plan Administrator. Mr. Fluharty testified that a wash plant had been a valuable asset in the Sabbatical estate, but he had no knowledge of whether Offutt Nord's services preserved the wash plant as an estate asset or otherwise provided value.

39. At the conclusion of the evidentiary presentation, counsel for the Plan Administrator again asked the Court for full disgorgement of the Retainer since Offutt Nord has never showed that its services provided benefit to the SMT bankruptcy estate. Counsel for Offutt Nord requested that the Court conclude that Offutt Nord provided value in exchange for the fees it was paid and requested that any disgorgement take into account the absence of ill, willful intent and the reasonableness of the fees charged in terms of Offutt Nord's hourly rate.

40. The matter is ready for adjudication.

## II.

**A. Analysis**

41.     If the Court desired to write a cautionary tale describing all the conceivable ways an estate professional could violate the Bankruptcy Code's provisions governing employment and retention of professionals, it would be hard pressed to develop a more egregious set of facts than those presented here.

42.     A debtor's attorneys and other professionals are not permitted to be compensated absent approval by the Bankruptcy Court.[4]   Specifically, sections 327 through 331 of the Bankruptcy Code govern the employment and compensation of attorneys and other professionals. Offutt Nord scarcely complied with a single one of these provisions.

43.     Section 327 limits the employment of estate attorneys and other professionals to persons who (1) do not hold or represent an interest adverse to the estate, (2) are "disinterested persons," and (3) are approved by the Bankruptcy Court.  11 U.S.C. § 327(a).[5] The Bankruptcy Code defines "disinterested person," in relevant part, as a person who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."  11 U.S.C. § 101(14).  Moreover, the Court may approve employment of an estate professional under Section 327 only "if such authorization is in the best interest of the

---

[4]   Court approval is equally required when the professional will be compensated from non-estate funds. *See, e.g., In re Walters*, 868 F.2d 665, 668 (4th Cir. 1989) ("[A]ny payment made to an attorney for representat[ion of] a debtor in connection with a bankruptcy proceeding is reviewable by the bankruptcy court notwithstanding the source of payment").

[5]   While Section 327 references only the right of a Trustee to employ professionals, a debtor in possession in a Chapter 11 case has all the rights, duties and powers of a trustee, including the right to employ estate professionals.  *See* 11 U.S.C. § 1107.

estate." 11 U.S.C. § 327(d). Also, the terms and conditions of the estate professional's employment must be reasonable. 11 U.S.C. § 328.

44. Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") governs applications to employ estate professionals. Such applications must

> state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, <u>all of the person's connections[6] with the debtor, creditors, any other party in interest</u>, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a) (emphasis added). "This disclosure is necessary to enable the court to evaluate fully whether the professional is actually a disinterested person and does not hold or represent an interest adverse to the estate, as required by section 327(a)." 3 COLLIER ON BANKRUPTCY ¶ 327.01[1] (16th ed.).

45. Applications to employ professionals should ideally be filed prior to commencing professional services, but at the very latest, must be filed promptly following the commencement of professional services to ensure that the professional may be compensated for its services. *See id*. Absent extraordinary circumstances, late-filed retroactive employment applications will be denied. *In re Young*, 646 B.R. 779 (Bankr. W.D. Pa. 2022) (denying an application seeking retroactive retention of counsel filed two years late for failure to show "extraordinary circumstances" where counsel, who claimed to be unaware of the bankruptcy case, was on

---

[6] Since "all connections" must be disclosed pursuant to Rule 2014, the disclosures required under Rule 2014 are much broader than required by Section 327(a). *See Waldron v. Adams & Reese, L.L.P. (In re Am. Int'l Refinery, Inc.)*, 676 F.3d 455, 465 (5th Cir. 2012).

constructive notice of the bankruptcy case because a PACER search performed at the time the engagement was undertaken would have identified the bankruptcy case).

46.     Offutt Nord *never* filed retention applications in the Involuntary Cases although it represented those debtor entities in their efforts to dismiss the cases.  The Retention Applications it did file only sought approval to provide services as local bankruptcy counsel.  Therefore, the scope of Offutt Nord's retention was extraordinarily narrow.

47.     Moreover, the Retention Applications incorrectly claimed that Offutt Nord was disinterested and failed to disclose both its prepetition and its ongoing, postpetition representation of Dennis Johnson, a shareholder/owner and creditor of the Debtors.  In fact, Offutt Nord's Invoices all named Dennis Johnson as the client, not any of the other Debtors.  Had this materially adverse interest been disclosed, the Court could not and would not have approved Offutt Nord's employment even in its narrow role as local bankruptcy counsel.

48.     An attorney that fails to obtain Bankruptcy Court approval to be employed by the bankruptcy estate forfeits the right to compensation.  *See Lamie v. U.S.T.*, 540 U.S. 526, 538-39 (2004) ("Adhering to conventional doctrines of statutory interpretation, we hold that § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327."); *see also Michel v. Federated Dep't Stores (In re Federated Dep't Stores)*, 44 F.3d 1310 (6th Cir. 1995) (overturning Bankruptcy Court decision awarding fees to Debtor's financial advisor who had not been approved as an estate professional because "the plain language of § 328(c) limits the bankruptcy court's discretion to grant or deny compensation to a professional person employed under § 327" and disgorging a portion of the compensation awarded).

49.     Likewise, the failure to timely and completely disclose all connections as required by Rule 2014 is sufficient grounds to revoke employment or deny compensation. *See, e.g.*, *I.G. Petroleum, L.L.C. v. Fenasci (In re West Delta Oil)*, 432 F.3d 347, 355 (5th Cir. 2005) (quoting *Kravit*); *Kravit, Gass & Weber S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 836 (7th Cir. 1998) ("Though [the "all known connections" disclosure] provision allows the fox to guard the proverbial hen house, counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation."); *Rome v. Braunstein*, 19 F.3d 54, 59-63 (1st Cir. 1994) ("Especially where there has been a clear failure to make timely and spontaneous disclosure of all facts material to a disqualifying conflict of interest, counsel appointed pursuant to section 327(a) can lay no *claim of right to a lesser sanction* than the bankruptcy court is authorized to impose pursuant to section 328(c)," i.e., denial of compensation.).

50.     This duty of disclosure is a continuing obligation, and an attorney has an affirmative duty to disclose potential conflicts arising after employment is approved. *See, e.g., In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 662-63 (Bankr. N.D. Ill. 2001) (full disclosure is required of any potential conflicts arising "during counsel's employment" by the estate); *In re Cleveland Trinidad Paving Co.*, 218 B.R. 385, 389 (Bankr. N.D. Ohio 1998) ("the obligation… for the applicant to disclose any adverse interest or lack of disinterestedness is a continuing obligation throughout any employment on behalf of the debtor's bankruptcy estate"); *In re Sauer*, 191 B.R. 402, 407 (Bankr. D. Neb. 1995) ("This requirement and duty to remain a disinterested person is ongoing.  A professional retained by the estate must remain disinterested throughout his or her entire tenure with the estate").

51.     Section 328 provides that "the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327… if, at any time during such professional person's employment … such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate…." 11 U.S.C. § 328(c).  *See also, e.g., Diamond Lumber, Inc. v. Unsecured Creditors' Comm*., 88 B.R. 773, 779 (N.D. Tex. 1988) ("Disclosure is essential because the conflicts determination is for the court and cannot properly be made unilaterally by the parties."); *In re Mayeaux*, 269 B.R. 614, 627 (Bankr. E.D. Tex. 2001) ("The duty is placed wholly upon the debtor's attorney to provide an absolute and complete disclosure of all payments received[,] and that attorney assumes all of the risks arising from any miscalculation or omission. … [E]very doubt in the mind of a debtor's attorney … must be construed in favor of disclosure regarding compensation payments so that the statutory right of creditors and the statutory duty of the Court to conduct a fee examination might be effectively protected."); *In re Southmark Corp.*, 181 B.R. 291, 295–96 (Bankr. N.D. Tex. 1995).

52.     Despite a continuing obligation to disclose all connections that may affect its employment eligibility, Offutt Nord never disclosed these connections to the Court.  These connections were forced to the surface only once the Plan Administrator began his quest to recover the $200,000 Retainer transferred from Bailes Craig to Offutt Nord.

53.     Whether to deny fees to a professional who is not disinterested is at the discretion of the Bankruptcy Court.  A denial of professional fees is not *required*, but it is appropriate in egregious cases. *See, e.g.,* 11 U.S.C. § 328(c) ("the court may deny allowance of compensation"); *Electro-Wire Products, Inc. v. Sirote & Permutt, P.C. (In re Prince)*, 40 F.3d 356 (11th Cir. 1994) (holding that disgorgement is not required by Section 328(c), but it is appropriate where the debtor's attorney failed to disclose conflicts of interest).

54.     Offutt Nord additionally failed to disclose the details of the Retainer and compensation received from the Related Debtors as required by Section 329.

55.     Section 329 requires that all attorneys representing a debtor must file a statement of compensation paid or agreed to be paid by the debtor if such agreement occurred within one year prior to the petition date.  Section 329 also expressly requires that this statement must include "<u>the source of such compensation</u>."  11 U.S.C. § 329(a).

56.     Any retainer received and held to secure payment of professional services must be fully disclosed to the Bankruptcy Court, and even an inadvertent or negligent failure to disclose the existence of a retainer can result in sanctions, including disqualification of counsel and full disgorgement of fees.  *See, e.g.*, *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881-82 (9th Cir. 1995), cert. denied, 516 U.S. 1049 (1996) (noting that "[e]ven a negligent or inadvertent failure to disclose" information about a retainer transaction may result in a denial of all requested fees, affirmed a bankruptcy court ruling that counsel should be disqualified for failure to disclose the retainer and ordered to disgorge all fees); *accord In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 849 (B.A.P. 10th Cir. 1997); *Futuronics Corp. v. Arutt, Nachamie, & Benjamin (In re Futuronics Corp.)*, 655 F.2d 463, 469-71 (2d Cir. 1981) (holding that the Bankruptcy Judge abused his discretion by awarding *any* compensation to a law firm that failed to disclose of all facts bearing on counsel's eligibility to be retained as counsel, including counsel's retainer agreement; under such egregious circumstances, "the only appropriate sanction to be imposed is to deny all compensation").

57.     Even worse than failing to disclose the details of the Retainer, Offutt Nord applied its Invoices against the Retainer without this Court's approval, or even disclosure to the Court.

58.     The rules implementing Section 329—Bankruptcy Rules 2016 and 2017—require attorneys employed by a debtor to file, within fourteen (14) days after the order for relief, a statement disclosing (1) all compensation paid or promised; (2) all services rendered or to be rendered in contemplation of or in connection with the case; (3) whether the payment or agreement to pay was made within a year prior to commencement of the bankruptcy case; and (4) any agreement or understanding concerning sharing of compensation. Fed. R. Bankr. P. 2016, 2017. And this requirement applies equally to professionals representing Debtors in involuntary cases— Offutt Nord should have filed a statement of compensation in the SMT case and the other Involuntary Cases as well. *See, e.g.*, *Dershaw v. Ciardi (In re Rite Way Elec., Inc.)*, 510 B.R. 471, 489 (Bankr. E.D. Pa. 2014) (holding that a law firm that represented the Debtor in contesting the involuntary petition must file a statement of compensation as required by section 329 and Rule 2016(b)).

59.     Under Rule 2017, which implements section 329, the court is charged with reviewing the statement of compensation to determine whether "any payment[s] of money by debtor, made directly or indirectly. . . before the entry of the order for relief . . ." are excessive." Fed. R. Bankr. P. 2017(a).

60.     While Mr. Burchett testified that he was unaware of the source of the Retainer Offutt Nord received, it was his business to know that detail.  Offutt Nord filed some of the bankruptcy petitions for Dennis Johnson's companies and should have uncovered the source of the Retainer and disclosed that information to the Court in its Statement of Compensation, Retention Applications, and otherwise.  As we now know, the source of the Retainer was SMT, whose involuntary bankruptcy was filed February 12, 2016 and an order for relief was entered on January 3, 2017.  The fact that Offutt Nord's utilization of the Retainer occurred during the Gap

Period is not a mitigating factor because Offutt Nord had multiple layers of disclosure obligations to this Court going back to May 18, 2016 when it filed bankruptcy petitions on behalf of other related debtor entities.

61.    Additionally, before receiving compensation, all estate professionals *must* submit an application to the Bankruptcy Court for approval of fees and expenses pursuant to Section 330. It is *exclusively* the Bankruptcy Court's responsibility to determine whether the amount of professional fees and expenses sought are reasonable, which involves an examination of "the nature, the extent, and the value of such services, taking into account all relevant factors, including:

(A) The time spent on such services;
(B) The rates charged for such services;
(C) Whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problems, issue, or task addressed;
(E) With respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
(F) Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

11 U.S.C. § 330(a)(3).

62.    Notably, the Bankruptcy Court may award less compensation than requested and "<u>shall not</u>" award compensation for services that are duplicative, not reasonably likely to benefit the estate, or not necessary to administration of the case.  *See* 11 U.S.C. § 330 (a)(2) and (4).

63.    The Bankruptcy Code "affords [bankruptcy] courts broad discretion to decide what constitutes reasonable compensation."  *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 136 (2015) (internal quotations omitted).

64.     Offutt Nord never filed a statement of compensation or a fee application and, therefore, interfered with the Bankruptcy Court's ability to fulfill its statutory duties to examine the reasonableness of compensation before it is paid.

65.     By never filing a fee application with this Bankruptcy Court, Offutt Nord concealed from the Bankruptcy Court the fact that it had been paid for legal services that exceeded the narrow scope of its retention as local bankruptcy counsel and, in many cases, were performed for Debtors that Offutt Nord was never approved to serve.  Significantly, Offutt Nord was never approved as counsel to Dennis Johnson, who filed bankruptcy in May of 2016, and who was the named client on all of Offutt Nord's Invoices.

66.     Offutt Nord has unquestionably failed to establish the reasonableness of the compensation it was paid.  It is the professional's burden to establish that the compensation sought is reasonable and that the professional is entitled to compensation.  *See, e.g.*, *In re Fibermark, Inc.*, 349 B.R. 385 (Bankr. D. Vt. 2006) ("A professional who applies for compensation in a bankruptcy case bears the burden of proving the reasonableness of the fees….  In order to sustain this burden, the applicant must present a carefully detailed application and supporting documents.").

67.     Offutt Nord cannot account for why the draft application was never filed, but the Court does not believe that the failure to file the draft application is mere inadvertence.  The Court does not view the fact that Offutt Nord prepared, but never filed, a draft fee application as a mitigating factor.   The draft application is, as the Plan Administrator described, "woefully insufficient."  The Bankruptcy Court could not have approved it if it had been filed.  The draft application seeks compensation for all services for which Offutt Nord paid itself from the Retainer (including a large number of services provided prepetition), but *still* never discloses the fact that it has *already* been paid without prior Court approval.  While the services performed are summarily

described in the draft application, no detailed time entries or invoices are provided.  It is clear from the description of the services, though, that the scope of the services far exceeds the scope of Offutt Nord's retention, both in the number of debtor entities served and the types of legal services provided.  The fees sought of $122,517.31 is shockingly higher than what the Court would expect to see from a firm merely serving as local counsel for a few months in a handful of bankruptcy cases.  Finally, it is not clear from the draft application how these unauthorized services provided by unauthorized, interested counsel provided any estate benefit.

68.    Upon review of the facts presented through testimony and submissions to the Court, the Court does not believe that the Retainer received by Offutt Nord was reasonable.  The record before the Court does not show a clear source of value provided to any debtor's estate from Offutt Nord's services, let alone a value provided to SMT.  Rather, Offutt Nord's legal services appear to have been provided solely for the benefit of its client, Dennis Johnson.[7]

69.    Offutt Nord's conduct reveals a pattern and practice of reckless disregard for the Bankruptcy Code, as well as the authority of this Court.  Whether this disregard was merely negligent or calculated is unclear, but Offutt Nord's conduct has been persistent and willful.

70.    This Court "possess[es] the inherent power to regulate litigants' behavior and to sanction wrongdoing by litigants."  *See, e.g., White v. Mitchell (In re Hardee),* 165 F.3d 18, 1998 WL 766699, at *3 (4th Cir. Oct. 20, 1998) (citing *McGahren*, 111 F.3d at 1171; *A.H Robins Co. v. Piccinin*, 788 F.2d 994, 1003 (4th Cir. 1986)).  This Court also has authority to sanction misconduct under 11 U.S.C. § 105(a).  Section 105(a) authorizes this Court to "issue any order,

---

[7]  The Court agrees with Offutt Nord that the hourly rates it charged were reasonable rates.  However, there is no evidence to support that the services rendered, all of which were provided to Dennis Johnson as the firm's client, were valuable to the debtors' bankruptcy estates. In the absence of that evidence, the rates charged are irrelevant.

process or judgment that is necessary or appropriate to carry out the provisions" of the Code and to "*sua sponte*. . . tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process." 11 U.S.C. § 105(a). This includes the power to award sanctions upon a finding of misconduct. *See, e.g.*, *In re Lewis*, 611 Fed.App'x 134, 137 (4th Cir. 2015) (affirming bankruptcy court's authority to sanction counsel for misconduct by suspending bar privileges in the district, requiring submission of monthly reports with respect to existing clients, and requiring payment of sanctions and disgorgement of fees pursuant to its inherent powers and section 105(a)).

71.     The Court will not retroactively bestow its blessing upon a law firm that has paid itself, without first seeking or obtaining Court approval, for legal services provided to debtor entities that were never approved by this Court in the first place and were provided in the face of material, undisclosed conflicts of interest.

72.     The only appropriate sanction is full and complete disgorgement of the fees Offutt Nord unauthorizedly paid itself from the Retainer.  Excluded from this disgorged amount are the following amounts:

a.   The $40,000 wire transfer sent to WTP on May 20, 2016;

b.   The $37,482.69 Offutt Nord turned over to the Chapter 11 Trustee on December 22, 2016;

c.   Bankruptcy filing fees of $1,717 per case paid by Offutt Nord on May 20, 2016 to open five bankruptcy cases (for Sabbatical, Moussie Processing, LLC, The Little Kentucky Elk, LLC, DJWV1, LLC, and the Elkview Reclamation and Processing, LLC), totaling $8,585; and

    d. Pro hac vice fees paid to secure lead bankruptcy counsels' appearance in those five bankruptcy cases, totaling $4,080. This amount is comprised of the Statement of Visiting Attorney $50 fee paid for two out-of-state professionals in five cases (totaling $500) and the annual *pro hac vice* admission fee payable to the WV State Bar in the amount of $358 for two out-of-state professionals in five cases (totaling $3,580).[8]

Therefore, the total fees to be disgorged from Offutt Nord and paid to the Plan Administrator is **$109,852.31**.

## III.

Attorneys serving as estate professionals are responsible for knowing and performing the attendant duties required by the Bankruptcy Code and Bankruptcy Rules. These professional obligations are strictly construed and applied, and violations can result in serious consequences. Unfortunately, the facts demonstrate that Offutt Nord has engaged in a pattern of callous and reckless disregard for its professional obligations throughout these bankruptcy proceedings. The only appropriate remedy for Offutt Nord's misconduct is disgorgement of all fees received, as calculated herein, as well as cancellation of any and all pending fee agreements it may have with the Debtors.

Accordingly, the Court rules as follows:

**IT IS ORDERED** that the Motion to Disgorge is GRANTED.

**IT IS FURTHER ORDERED** that any pending fee arrangements between Offutt Nord and the Debtors are hereby cancelled.

---

[8] This includes an $8 processing fee charged by the WV State Bar in addition to the $350 annual *pro hac vice* fee that has been in place since January 1, 2015.

**IT IS FURTHER ORDERED** that **$109,852.31** is hereby disgorged from Offutt Nord.  Offutt Nord shall pay the disgorged funds to the Plan Administrator within sixty (60) days of entry of this Order.

The Clerk's Office shall serve a copy of this written opinion and order on the Plan Administrator, counsel to Offutt Nord, counsel to the Trustee Thomas Fluharty, and counsel to the United States Trustee.